# In the United States Court of Federal Claims

No. 10-675 C

(E-Filed: November 16, 2010)[1]
(E-Filed with Redactions: December 2, 2010)

MATT MARTIN REAL ESTATE MANAGEMENT LLC,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

HOMETELOS LP,

Defendant-Intervenor,

and

Post-Award Bid Protest; Challenge to Evaluation Plan Employing "Overall" Technical Ratings Based on Consensus Evaluations of Technical Evaluation Team (TET)

[1]This Opinion was filed under seal on November 16, 2010, Docket Number (Dkt. No.) 45. The court instructed the parties to file any requests for the redaction of protected material on or before Tuesday, November 23, 2010 at 12:00 noon Eastern Standard Time. In response to the court's directive of November 16, 2010, and its further Order of November 23, 2010, Dkt. No. 53 (requesting defendant and defendant-intervenor HomeTelos to re-file their motions to redact in a more readable format), HomeTelos LP (HomeTelos) and defendant United States filed motions to redact. Defendant's Supplemental Motion to Redact (Defendant's Motion to Redact), Dkt. No. 55, filed November 23, 2010; Intervenor HomeTelos's Motion to Redact Protected Material From Sealed Opinion (HomeTelos's Motion to Redact), Dkt. No. 57, filed December 1, 2010. HomeTelos's Motion to Redact was filed late. Defendant's Motion to Redact is GRANTED. HomeTelos's Motion to Redact, notwithstanding its late filing, is also GRANTED. In connection with its Motion to Redact, defendant requested that the court replace the name Patrick Simien, counsel for the Department of Housing and Urban Development, with the names Tara Kilfoyle and Kasey Podzius. The court has done so.

BLB RESOURCES, INC.,

Defendant-Intervenor,

and

OFORI & ASSOCIATES,

Defendant-Intervenor,

and

PEMCO LTD.,

Defendant-Intervenor.

Susan L. Schor, Washington, DC, for plaintiff; Laurence Schor, Dennis C. Ehlers and David A. Edelstein, Washington, DC, of counsel.

Katy Bartelma, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant; Tara Kilfoyle and Kasey Podzius, counsel for the Department of Housing and Urban Development, Washington, DC.

J. Alex Ward, Washington, DC, for defendant-intervenor HomeTelos LP; Leslie H. Lepow, Eric R. Haren and Damien C. Specht, Washington, DC, of counsel.

John G. Horan, Washington, DC, for defendant-intervenor BLB Resources, Inc.; Marques O. Peterson, Washington, DC, of counsel.

Joseph P. Hornyak, McLean, VA, for defendant-intervenor Ofori & Associates; Megan Mocho Jeschke, McLean, VA, of counsel.

Margaret S. Dillenburg, Washington, DC, for defendant-intervenor PEMCO Ltd.; Alexander Brittin, Vienna, VA, of counsel.

OPINION[2]

HEWITT, Chief Judge

This is a post-award bid protest brought by Matt Martin Real Estate Management LLC (Matt Martin or plaintiff), an unsuccessful offeror in Solicitation R-OPC-23441 (Solicitation) issued by the United States government acting through the United States Department of Housing and Urban Development (HUD, the government or defendant).

Before the court are plaintiff's Motion for Judgment on the Administrative Record, Docket Number (Dkt. No.) 23, filed October 22, 2010; plaintiff's Memorandum in Support of Plaintiff's Motion for Judgment on the Administrative Record (Pl.'s Mem. or plaintiff's Memorandum), Dkt. No. 24, filed October 22, 2010; defendant-intervenor PEMCO Ltd's (PEMCO's) Cross Motion for Judgment on the Administrative Record, Dkt. No. 26, filed October 29, 2010; defendant-intervenor BLB Resources, Inc.'s (BLB's) Cross-Motion for Judgment on the Administrative Record Sustaining the Unchallenged Award to BLB Resources, Dkt. No. 27, filed October 29, 2010; defendant-intervenor Ofori & Associates, P.C.'s (Ofori's) Cross-Motion for Judgment on the Administrative Record, Dkt. No. 28, filed October 29, 2010; defendant's Motion to Dismiss, or, in the Alternative, Cross-Motion for Judgment upon the Administrative Record and Response to Plaintiff's Motion for Judgment upon the Record (Def.'s Mot.), Dkt. No. 29, filed October 29, 2010; defendant-intervenor HomeTelos, LP's (HomeTelos's) Memorandum in Support of its Cross-Motion for Judgment on the Administrative Record, Dkt. No. 30, filed October 29, 2010; plaintiff's Reply to Defendant's and Intervenors' Responses to Plaintiff's Motion for Judgment on the Administrative Record and Plaintiff's Response to Defendant's Motion to Dismiss and Plaintiff's Response to Defendant's and Intervenors' Cross-Motions for Judgment on the Administrative Record (Pl.'s Reply), Dkt. No. 32, filed November 3, 2010; defendant-intervenor PEMCO's Reply, Dkt. No. 33, filed November 8, 2010; defendant-intervenor Ofori's Reply to Plaintiff's Response to Cross-Motion for Judgment on the Administrative Record, Dkt. No. 35, filed November 8,

---

[2]Defendant contends that plaintiff Matt Martin Real Estate Management LLC (Matt Martin) has violated the protective order in Pyramid Real Estate Services, LLC v. United States (Pyramid), No. 10-599 C, 2010 WL 4299979 (Fed. Cl. Nov. 1, 2010), Docket Number (Dkt. No.) 16. Defendant's Motion to Dismiss, or, in the Alternative, Cross-Motion for Judgment upon the Administrative Record and Response to Plaintiff's Motion for Judgment upon the Record (Def.'s Mot.) 11-12. Dkt. No. 29. The court is addressing the alleged violation of the Pyramid protective order in the Pyramid case. The court has not determined whether or not the Pyramid protective order was violated. However, the court has determined that the alleged violation of the protective order in Pyramid does not, as defendant contends, see Def.'s Mot. 12, require that Matt Martin's pleadings be stricken in this matter.

2010; defendant's Reply in Support of Defendant's Motion to Dismiss, or, in the Alternative, Cross-Motion for Judgment upon the Administrative Record, Dkt. No. 36, filed November 8, 2010; and defendant-intervenor HomeTelos's Reply in Support of its Cross-Motion for Judgment on the Administrative Record, Dkt. No. 38, filed November 8, 2010.

The court held oral argument at the National Courts Building on Wednesday, November 10, 2010 at 10 a.m. Eastern Standard Time.

Plaintiff contends that by using overall ratings to evaluate each offeror's proposal HUD made an award decision that was arbitrary and capricious. Pl.'s Mem. 9. Defendant contends that HUD's award decision had a reasonable basis. Def.'s Mot. 26-27. The court agrees with defendant: HUD's ultimate selection of the awardees was not arbitrary and capricious.

I. Background

A. The Solicitation

1. The Role of Asset Managers

HUD, acting through the Federal Housing Administration (FHA), runs a homeownership program called the single-family mortgage insurance program, which insures lenders against the risk of loss for loans on single-family homes. Administrative Record (AR) Tab 13, at 405. When borrowers default on their loans, lenders often acquire the property by foreclosure or by deed-in-lieu of foreclosure. Id. Lenders insured by the single-family mortgage insurance program then file a claim for benefits from HUD and convey the property to HUD. Id.

As a result of this program and others, HUD has a large inventory of properties, known as Real Estate-Owned (REO) properties, to manage and sell. Id. Since 1999, HUD has relied on outsourcing to Management and Marketing (M&M) vendors, who help to manage and market its REO portfolio. Id. In the past, HUD contracted with single entities to both manage and market its REO properties but, after conducting marketing research of "industry best practices," it decided to split the responsibilities of M&M vendors and began contracting with Asset Managers (AMs), companies which focus on marketing HUD properties. Id.

On July 6, 2009 HUD issued its Solicitation for AMs. AR Tab 13, at 358. The Solicitation was a "Firm Fixed Price type arrangement with multiple awards [to be] issued against the General Service Administration (GSA) Financial and Business Solution

(FABS) Schedule 520, in accordance with Federal Acquisition Regulations (FAR) Subpart 8.4 Federal Supply Schedule."[3] Id. at 360. HUD invited vendors to submit bids for one or more of ten geographic Homeownership Center Areas (HCAs or Areas). Id.

2. The Evaluation Framework

The Solicitation listed five factors that would be used to evaluate proposals. In descending order of importance, they were:

- FACTOR 1: Socio-Economic [S]tatus
- FACTOR 2: Marketing and Sales Approach
- FACTOR 3: Management Work Plan
- FACTOR 4: Past Performance
- FACTOR 5: Price

Id. at 516. The possible ratings for the non-price factors (factors 1-4 above), in descending order of importance, were "Excellent," "Very Good," "Good," "Fair" and "Unsatisfactory." AR Tab 10, at 311. The Solicitation stated that "[t]he non-price factors when combined are more important than price." AR Tab 13, at 516.

The Solicitation also stated that "a best value analysis will be performed to determine the best overall value for the Government within each Homeownership Center Geographic Area . . . ." Id. at 520. While price was to be the least important factor, "as the Offerors [became] more equal in non-price merit, the importance of price to the source selection decision [would] increase." Id. The Solicitation did not specify the weight to be given to each of the five factors. In fact, Amendment 4 to the Solicitation issued August 28, 2009 stated, "Weights/percentages are not applied to the factors." AR Tab 14, at 582.

B. The Evaluation of Proposals Submitted for HCAs 3P, 1A, 2A and 2S

---

[3]The Department of Housing and Urban Development (HUD) determined that the primary objectives of Asset Managers were to ensure that:

"1. Properties are accurately and competitively valued.
2. Sales achieve the highest net return.
3. Holding time is minimized.
4. Sales create owner-occupant opportunities.
5. Closing proceeds are properly accounted for and delivered to HUD in a timely manner."

Administrative Record (AR) Tab 13, at 409.

Matt Martin submitted a proposal for HCAs 3P, 1A, 2A and 2S. See AR Tab 46. Matt Martin's proposal was reviewed by a selection team composed of a five-member Technical Evaluation Team (TET) and a Source Selection Official (SSO). See AR Tab 10, at 308. The TET prepared a summary report evaluating each vendor's initial proposals (Initial Evaluation) and a summary report evaluating each vendor's revised proposals (Revised Evaluation, collectively with the Initial Evaluation, The Evaluation). See AR Tabs 44, 43. The Initial and Revised Evaluations document HUD's extensive analysis of each proposal. See id. The Evaluations identify strengths, weaknesses and significant weaknesses of each of the proposals. Id. In their entirety, the reports run to more than 650 pages. Id. After conducting the Initial and Revised Evaluations, the TET prepared a memorandum for the SSO containing its recommendation of source selection for award of task orders (Source Selection Memorandum). AR Tab 42. The SSO made the final award decision. AR Tab 41, at 1700. The Evaluation Plan required the SSO to make her decision for award "based upon a comparative assessment of proposals against all evaluation factors stated in the [Solicitation]." AR Tab 10, at 319.

The TET rated Matt Martin's Technical Proposal in the Source Selection Memorandum as follows:

FACTOR 1: Socio-Economic Status - [***]
FACTOR 2: Marketing and Sales Approach - [***][4]
FACTOR 3: Management Work Plan - [***]
FACTOR 4: Past Performance - [***]

AR Tab 42, at 1703.

Based on the non-price factors, the TET generated an overall rating. See id. The Solicitation did not disclose that overall ratings would be used to evaluate proposals and therefore, did not explain how the TET was to generate an overall rating. AR Tab 13, at 516-20. The Evaluation Plan, an internal document, stated that overall ratings would be assigned, but did not discuss how overall ratings would be generated. AR Tab 10, at 316 ("The TET will document their proposal evaluations (on both factor-by-factor and overall proposal) on a consensus basis and record the rating on the consensus score sheet."). Matt Martin received an overall rating of "Good." AR Tab 42, at 1703.

---

[4]Matt Martin received a "[***]" factor 2 rating in the Initial Evaluation. AR Tab 44, at 2248-65. Matt Martin received a "[***]" in the Revised Evaluation. AR Tab 43, at 1863. The court discusses the discrepancy in Part III.A below.

In HCA 3P, Cityside-HHN CTA (Cityside) was selected for award. AR Tab 41, at 1700. Cityside's ratings were as follows:

FACTOR 1: Socio-Economic Status - [***]
FACTOR 2: Marketing and Sales Approach - [***]
FACTOR 3: Management Work Plan - [***]
FACTOR 4: Past Performance - [***]

AR Tab 42, at 1702. Cityside received an overall rating of Good. Id.

In HCAs 1A and 2A, HomeTelos was selected for award. AR Tab 41, at 1700. HomeTelos's ratings were as follows:

FACTOR 1: Socio-Economic Status - [***]
FACTOR 2: Marketing and Sales Approach - [***]
FACTOR 3: Management Work Plan - [***]
FACTOR 4: Past Performance - [***][5]

AR Tab 42, at 1703. HomeTelos received an overall rating of Good. Id.

In HCAs 1A, 2A and 2S, PEMCO was selected for award. AR Tab 41, at 1700. PEMCO's ratings were as follows:

FACTOR 1: Socio-Economic Status - [***]
FACTOR 2: Marketing and Sales Approach - [***]
FACTOR 3: Management Work Plan - [***]
FACTOR 4: Past Performance - [***]

AR Tab 42, at 1703. PEMCO received an overall rating of Good. Id.

In HCAs 3P, 1A and 2A, Ofori was selected for award. AR Tab 41, at 1700. Ofori's ratings were as follows:

FACTOR 1: Socio-Economic Status - [***]
FACTOR 2: Marketing and Sales Approach - [***]
FACTOR 3: Management Work Plan - [***]
FACTOR 4: Past Performance - [***]

---

[5] [***].

AR Tab 42, at 1703. Ofori received an overall rating of Good. Id.

## II. Legal Standards

### A. Bid Protest Standard of Review

The Tucker Act, as amended by the Administrative Dispute Resolution Act (ADRA), 28 U.S.C. § 1491(b)(1) (2006), confers jurisdiction on this court:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1). The court reviews a bid protest action under the standards set out in the Administrative Procedure Act (APA), 5 U.S.C. § 706. 28 U.S.C. § 1491(b)(4); NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004). The APA provides that an agency's decision is to be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see also Bannum, Inc. v. United States (Bannum), 404 F.3d 1346, 1351 (Fed. Cir. 2005); Galen Med. Assocs., Inc. v. United States (Galen), 369 F.3d 1324, 1329 (Fed. Cir. 2004); Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa), 238 F.3d 1324, 1332 (Fed. Cir. 2001); Advanced Data Concepts, Inc. v. United States (Advanced Data Concepts), 216 F.3d 1054, 1057 (Fed. Cir. 2000).

Under the arbitrary or capricious standard of review, an agency's decision must be sustained if it has a rational basis. Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co. (State Farm), 463 U.S. 29, 43 (1983). "The arbitrary and capricious standard applicable here is highly deferential. This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." Advanced Data Concepts, 216 F.3d at 1058 (citing Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc. (Bowman), 419 U.S. 281, 285 (1974)). In particular, the reviewing court may not substitute its judgment for that of the agency. State Farm, 463 U.S. at 43.

Under the APA standard of review, as applied in Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), and now under the ADRA, "a bid award may be set aside if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." Impresa, 238 F.3d at 1332. Challenges to decisions on the basis of a violation of a regulation or

procedure "must show a clear and prejudicial violation of applicable statutes or regulations." Id. at 1333 (internal quotation and citation omitted).

In order to prevail in a bid protest, a "protester must show not only a significant error in the procurement process, but also that the error prejudiced [the protestor]." Data Gen. Corp. v. Johnson (Data Gen.), 78 F.3d 1556, 1562 (Fed. Cir. 1996) (citations omitted); see also Alfa Laval Separation, Inc. v. United States (Alfa Laval), 175 F.3d 1365, 1367 (Fed. Cir. 1999). If the court finds that there is no error, there is no prejudice and the government's decisions must be left undisturbed. Alfa Laval, 175 F.3d at 1367 (requiring that a protestor establish "significant, prejudicial error" to prevail in a bid protest). The first step is to demonstrate error: to show that the agency acted in an arbitrary and capricious manner, without a rational basis or contrary to law. Bannum, 404 F.3d at 1351. The next step is to determine whether the error was prejudicial. Id. "[N]on-prejudicial errors in a bid process do not automatically invalidate a procurement." Labatt Food Serv. v. United States (Labatt), 577 F.3d 1375, 1380 (Fed. Cir. 2009) (internal citations omitted). The plaintiff must demonstrate both that an error occurred and that such error was prejudicial. Data Gen., 78 F.3d at 1562. In the context of a post-award bid protest, "the plaintiff must demonstrate 'substantial prejudice' by showing that there was a 'substantial chance' it would have been awarded the contract but for the agency's error." Weeks Marine, Inc. v. United States, 79 Fed. Cl. 22, 35 (2007) (citing Bannum, 404 F.3d at 1353), aff'd in relevant part, 575 F.3d 1352 (Fed. Cir. 2009).

B. Motions for Judgment on the Administrative Record

Rule 52.1 of the Rules of the United States Court of Federal Claims (RCFC) provides for judgment on the administrative record "[w]hen proceedings before an agency are relevant to a decision in a case" before the court. RCFC 52.1(a). RCFC 52.1 does not address the standards and criteria to be applied in cases decided pursuant to RCFC 52.1 because "[t]he standards and criteria governing the court's review of agency decisions vary depending upon the specific law to be applied in particular cases." RCFC 52.1 Rules Committee Note (2006). Accordingly, the standards of review and burdens of proof and persuasion are set by the terms of the applicable substantive law, including, in this case, statutory and case law discussed above in Part II.A.

A court reviewing an agency action in a best value procurement must be highly deferential, and the agency that made the determination in question is presumed to have acted in a reasonable and rational manner. Advanced Data Concepts, 216 F.3d at 1058; Fort Carson Support Servs. v. United States (Fort Carson), 71 Fed. Cl. 571, 586 (2006). A plaintiff must rebut the presumption of a rational basis in order to upset the agency's findings. See L-3 Commc'ns EOTech, Inc. v. United States, (L-3 Commc'ns), 87 Fed. Cl. 656, 664 (2009); see also Advanced Data Concepts, 216 F.3d at 1058 (The arbitrary

and capricious "standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors.") (internal quotation marks omitted). In other words, "[m]ere disagreement with an agency's handling of a procurement matter falls short of meeting the burden of proving that the process was arbitrary and capricious." Blackwater Lodge & Training Ctr., Inc. v. United States (Blackwater), 86 Fed. Cl. 488, 514 (2009) (citations omitted). Moreover, a plaintiff's burden is "elevated where the solicitation contemplates award on a 'best value' basis." Id. at 503 (citing Galen, 369 F.3d at 1330). In determining whether an agency acted rationally, the court is particularly deferential to the agency's technical evaluation. L-3 Commc'ns, 87 Fed. Cl. at 664. "In particular, the evaluation of proposals for their technical excellence or quality is a process that often requires the special expertise of procurement officials, and thus reviewing courts give the greatest deference possible to these determinations." Fort Carson, 71 Fed. Cl. at 586 (citations omitted).

"Contracting officers are not obligated by the APA to provide written explanations for their actions." Impresa, 238 F.3d at 1337. Moreover, agency actions are entitled to a presumption of "regularity." Id. at 1338. There is a "strong presumption that government officials act correctly, honestly, and in good faith when considering bids." Savantage Fin. Servs., Inc. v. United States (Savantage), 86 Fed. Cl. 700, 703-04 (2009) (citations omitted), aff'd, 595 F.3d 1282 (Fed. Cir. 2010).

The court will not second-guess the ratings given by procurement officials that involve discretionary determinations. See E.W. Bliss Co. v. United States (Bliss), 77 F.3d 445, 449 (Fed. Cir. 1996). The question for the court is not whether the agency is correct or whether the court would have reached the same conclusion as the agency did, but whether there was a reasonable basis for the agency's actions. Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) ("If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971))).

## III. Discussion[6]

---

[6]HomeTelos argues that Matt Martin is estopped from arguing that HUD's evaluation of proposals was arbitrary and capricious because Matt Martin took a contrary position in Pyramid, 2010 WL 4299979. In this case, however, Matt Martin argues that "the procurement essentially became a 'lowest cost technically acceptable' procurement among offerors with 'Good' or better overall ratings." Matt Martin's position in this case is distinguishable from Matt Martin's position in Pyramid that HUD properly considered 'Fair' proposals inferior to 'Good' proposals.

continue...

In its Memorandum, Matt Martin makes a number of arguments regarding HUD's evaluation of the five factors and its generation of overall ratings. First, Matt Martin argues it should have received a [***] factor 2 rating. Pl.'s Mem. 13 n.4. Second, Matt Martin contends that HUD ignored the descending order of importance of the five evaluation factors and "erred in assigning overall ratings that obscured clear, significant differences in technical merit" which should have resulted in Matt Martin's receiving a higher overall rating. Pl.'s Mem. 12. Third, Matt Martin argues that HUD failed to evaluate each proposal's strengths and weaknesses. See Pl.'s Mem. 17 ("[T]he TET's comparison of . . . proposals consisted of nothing more than conclusory statements."). Fourth, Matt Martin contends that the SSO[7] did not comply with FAR Part 15. See Pl.'s Mem. 18. Fifth, Matt Martin argues that "the TET had no objective rules or guidance on how to assign an overall rating on the basis of the four technical factors," with the result that the "overall ratings were, by definition, arbitrary." Pl.'s Mem. 12.

A. Whether Matt Martin Received a [***] or [***] Factor 2 Rating

Matt Martin argues it should have received a [***] rating for factor 2. Pl.'s Mem. 13 n.4. Matt Martin received a [***] rating for factor 2 in the Initial Evaluation and a [***] rating for factor 2 in the Revised Evaluation. AR Tab 44, at 2248; AR Tab 43, at 1863. Importantly, Matt Martin's factor 2 sub-factor ratings were not modified after the Initial Evaluation. Matt Martin received the same factor 2 rating, with the following sub-factor ratings in both the Initial and Revised Evaluations: 2.1 [***]; 2.2 [***]; 2.3 [***]; 2.4 [***]; 2.5 [***]; 2.6 [***]. AR Tab 44, at 2248-57. Matt Martin received a [***] factor 2 rating in the Source Selection Memorandum, which was issued after the Revised Evaluation. AR Tab 42, at 1703. The change in Matt Martin's factor 2 rating from [***] in the Initial Evaluation to [***] in the Revised Evaluation appears to the court likely to have resulted from the TET's having concluded that it had erroneously listed Matt Martin's overall factor 2 rating as [***] in the Revised Evaluation and therefore corrected that error in the Source Selection Memorandum. In particular, it appears to the court unlikely that Matt Martin's factor 2 sub-factor ratings of four [***] and two [***] would have been "averaged" to a factor 2 rating of [***]. Although the text of the AR does not document the change in Matt Martin's factor 2 rating between the preparation of the

---

[6]...continue
See id.; Plaintiff's Reply to Defendant's and Intervenors' Responses to Plaintiff's Motion for Judgment on the Administrative Record and Plaintiff's Response to Defendant's Motion to Dismiss and Plaintiff's Response to Defendant's and Intervenors' Cross-Motions for Judgment on the Administrative Record (Pl.'s Reply) 14 n.8. Dkt. No. 32.

[7]In its brief, Matt Martin contends the SSA did not comply with FAR Part 15. In this procurement, an SSO, not an SSA, made the award decision. See AR Tab 41, at 1700.

Revised Evaluation and the preparation of the Source Selection Memorandum, the court thinks it likely that agency personnel simply saw the error and corrected it.

B. Whether HUD Ignored the Descending Order of Importance of the Five Evaluation Factors[8]

The Solicitation stated that the five evaluation factors (Socio-Economic Status, Marketing and Sales Approach, Management Work Plan, Past Performance and Price) were listed "in descending order of importance." AR Tab 10, at 312. Matt Martin contends that HUD ignored the descending order of importance of the five factors and, as a result, failed to evaluate proposals in accordance with the Solicitation. Pl.'s Mem. 10. Matt Martin further argues that "HUD erred in assigning overall ratings that obscured clear, significant differences in technical merit" which should have resulted in Matt Martin's receiving a higher overall rating. Pl.'s Mem. 12. However, nothing in the AR suggests that HUD ignored the descending order of importance of the five factors when it gave Matt Martin an overall rating of "Good." Plaintiff has pointed to nothing in the AR that would prompt the court to second-guess a rating given by procurement officials that involved discretionary determinations. See Bliss, 77 F.3d at 449. None of the individual factor ratings for each offeror is substantially different from those of the other offerors such that HUD's overall ratings could be considered irrational. There is an absence of evidence of behavior by the agency that was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law, see 5 U.S.C. § 706(2)(A),[9] whether or not Matt Martin is viewed as having a [***] or [***] rating for factor 2.

Of course, HUD could have used an evaluation methodology that resulted in more than the five possible overall ratings of "Excellent," "Very Good," "Good," "Fair" and

---

[8]According to Matt Martin, "HUD changed its evaluation scheme, without notice to the offerors . . . ." Plaintiff's Memorandum in Support of Plaintiff's Motion for Judgment on the Administrative Record (Pl.'s Mem.) 11. Dkt. No. 24. For a change in evaluation scheme to be actionable, "a protester must show that . . . the procuring agency used a significantly different basis in evaluating the proposals than was disclosed . . . ." Banknote Corp. of Am., Inc. v. United States, 56 Fed. Cl. 377, 387 (2003). Here, Matt Martin has not met that burden. See infra Parts III.B, C. HUD made an award decision based on the five factors listed in the Solicitation. The fact that HUD aggregated the four non-price factors into one overall score does not in the court's view in the circumstances of this procurement, constitute a significantly different basis in evaluating the proposals.

[9]See supra Part III.A (determining that the Source Selection Memorandum's [***] rating for factor 2 does not appear to have been a mistake, but more likely reflects the correction of a mistake).

"Unsatisfactory." In a system with only five possible overall ratings, each rating may include proposals with the same overall rating that vary somewhat in technical quality. However, whether a different rating system could have been used is not the appropriate inquiry. See Honeywell, Inc., 870 F.2d at 648. The rating system is not unreasonable. Similarly, whether the court or an individual offeror might arrive at a different overall rating based on the individual factor ratings is irrelevant. Id. Moreover, the AR does not establish, as plaintiff contends, Pl.'s Mem. 16-17, that the SSO made her award decision based solely on overall rating and price. Indeed, when the AR is examined in its entirety--in particular the narrative discussions in the Initial and Revised Evaluations--it is clear that, while HUD used an overall rating to summarize its findings, it did in fact evaluate each factor for each proposal. The court views the overall rating as a method to group together proposals that the agency determines to be substantially comparable. The Solicitation does not require the agency to make its award based on every possibly measurable degree of difference. In the court's view, the use of an overall rating that does not reflect each possibly measurable degree of difference within the overall categories cannot be considered "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See 5 U.S.C. § 706(2)(A).

Matt Martin states that "[t]he only possible conclusion from a factor-by-factor comparison is that HUD downplayed the significance of Socio-Economic Status, putatively the most important technical factor." Pl.'s Reply 19. At oral argument, Matt Martin further emphasized the importance of factor 1. See generally Oral Argument of November 10, 2010, Argument of Mr. Edelstein, 10:40:45-50:43 ("We have factor 1, which is the Socio-Economic Factor, the most important factor . . . a primary factor for award . . . ."). Matt Martin appears to believe that its [***] rating for factor 1 should result in its receiving a higher overall rating. Id. However, factor 1 is not the only factor to be considered, nor is factor 1 assigned a certain weight or percentage. See AR Tab 10; see also AR Tab 14, at 582 ("Weights/percentages are not applied to the factors."). The Solicitation required HUD to consider five factors, not one. See AR Tab 10.

C. Whether HUD Failed to Evaluate Each Proposal's Strengths and Weaknesses

Matt Martin argues that, rather than evaluating each proposal's strengths and weaknesses, HUD considered all "Good" proposals to be technically equal and made its decision on the basis of price. See Pl.'s Mem. 16-17. This argument is without support in the AR. The TET members rated each proposal independently. AR Tab 10, at 316. Once individual TET members completed their individual evaluations, the TET convened to review and compare individual evaluation ratings. Id. at 317. The TET members discussed the strengths, weaknesses, significant weaknesses and deficiencies of each offeror and determined appropriate ratings. Id. The TET then completed an Initial

Evaluation devoting twenty-two pages to its analysis of Matt Martin's proposal. AR Tab 44, at 2248-70. In the Initial Evaluation, the TET identified Matt Martin's strengths and weaknesses and included a narrative explaining its basis for each determination. Id. The TET then requested revised proposals. AR Tab 21. In the Revised Evaluation, the TET devoted eight pages to its analysis of Matt Martin's proposal. AR Tab 43, at 1860-67.

Following the Initial and Revised Evaluations, the TET prepared its Source Selection Memorandum with ratings of each proposal based on the Solicitation factors and the Initial and Revised Evaluations. AR Tab 42, at 1702. The TET submitted the Source Selection Memorandum, its Initial Evaluations and its Revised Evaluations to the SSO. Id.

The SSO stated in her recommendation memorandum to the Contracting Officer, "I have reviewed the Technical Evaluation Team's (TET's) documented comparative assessment of all timely proposals received under the subject Request for Quotations (RFQ) and the underlying TET report. I have made an independent decision based upon the information presented to me." AR Tab 41, at 1700.

"There is a strong presumption that government officials act correctly, honestly, and in good faith when considering bids." HomeSource Real Estate Asset Servs., Inc. v. United States (HomeSource), 94 Fed. Cl. 466, 479 (2010) (quoting Savantage 86 Fed. Cl. at 703-04). Nothing in the AR suggests that the SSO did not "act correctly, honestly, and in good faith," in considering all relevant information when making her award decision. Indeed, when the AR is examined in its entirety, and in particular the narrative discussions in the Initial Evaluations and Revised Evaluations, the AR shows that, while HUD used an overall rating to summarize its findings, it did in fact evaluate each factor for each proposal. See AR Tab 44, at 2248-70; see also AR Tab 43, at 1860-67. Matt Martin's disagreement with the award decision does not establish that the SSO did not base her decision "upon a comparative assessment of proposals against all evaluation factors stated in the RFQ" as required by the Evaluation Plan. AR Tab 10, at 319.[10]

---

[10]To support its argument, Matt Martin relies on an evaluation conducted by the Source Selection Authority (SSA) in a procurement conducted under FAR Part 15. CRAssociates, Inc. v. United States, No. 10-339 C, 2010 WL 4162118 (Fed. Cl. Oct. 4, 2010, reissued Oct. 20, 2010); see Pl.'s Reply 14-15. In CRAssociates, the administrative record contained an extensive written comparison of the strengths and weaknesses of several offerors. See CRAssociates, 2010 WL 4162118, at *5. However, the documentation contained in the administrative record of the evaluation process by the SSA in a FAR Part 15 procurement does not set the standard for the SSO in this case. The applicable standard is whether the agency acted in an arbitrary or capricious manner, without a rational basis or contrary to law. See Bannum, Inc. v. United

continue...

D. FAR Part 15 and FAR 8.405-2(e)

Matt Martin contends that the AR does not establish that the SSO conducted an independent best-value analysis "or that she made any tradeoffs or business judgments that would justify accepting a technically inferior proposal." Pl.'s Mem. 18 (citing FAR 15.308) see also Pl.'s Mem. 11-12. This procurement was conducted pursuant to FAR Subpart 8.4. See AR Tab 13, at 360. FAR Subpart 8.4 and FAR Part 15 are different provisions with different purposes. The amount of documentation necessary in FAR Subpart 8.4 procurements does not rise to the level required by FAR Part 15.[11] "The very purpose of FAR Part 8 is to provide a more simplified and flexible approach away from the more formal and rigorous procedures for negotiated procurements." Allied Tech. Grp. Inc. v. United States, 94 Fed Cl. 16, 50 (2010) (internal quotation omitted). "Orders placed against [Federal Supply Schedule] contracts are viewed as involving 'full and open competition' without requiring the use of procedures contained in FAR Part 15." HomeSource, 94 Fed. Cl. at 486 (citing FAR 8.404(a)). The Evaluation Plan uses some language that also appears in FAR Part 15. See AR Tab 10, at 319. However, the use of some of the same words in two procurements does not transform a FAR Subpart 8.4 procurement into a FAR Part 15 procurement. See Ellsworth Assocs., Inc. v. United States, 45 Fed. Cl. 388, 394 (1999) ("The decisional law does not support plaintiff's contention that an FSS selection process that is handled more like a negotiated procurement must comply with the requirements of Part 15.").

Matt Martin's argument in criticism of the documentation of the agency's decision in this case relies substantially on CRAssociates, Inc. v. United States, No. 10-339 C,

---

[10]...continue
States (Bannum), 404 F.3d 1346, 1351 (Fed. Cir. 2005). There is no evidence that HUD failed to meet the applicable standard in this case.

[11]Compare FAR 8.405-2(e) with FAR 15.308. FAR 8.405-2(e) contemplates, inter alia, the following items of minimum documentation:

"4. [t]he evaluation methodology used in selecting the contractor to receive the order;
5. [t]he rationale for any tradeoffs in making the selection . . ."

FAR 15.308 requires that "The source selection decision shall be documented, and the documentation shall include the rationale for any business judgments and tradeoffs made or relied on by the SSA, including benefits associated with additional costs."

In this FAR 8.405 procurement the SSO made her selections from among the proposals with an overall rating of good. See AR Tabs 41, 42. Accordingly, one would not expect to find documentation of any tradeoffs in her recommendation to the Contracting Officer.

2010 WL 4162118 (Fed. Cl. Oct. 4, 2010, reissued Oct. 20, 2010), and Femme Comp, Inc. v. United States, 83 Fed. Cl. 704 (2008), Pl.'s Reply 11-15, 24-27, two cases interpreting FAR Part 15, not FAR Subpart 8.4. In Femme Comp, the court found that the SSA had failed to document adequately her comparative analysis of each proposal. Femme Comp, 83 Fed. Cl. at 767-68. The court determined that the SSA's conclusions in her Source Selection Document appeared to have relied on assigned factor ratings instead of underlying evaluations, in violation of FAR 15.308. Id. Matt Martin's reliance on Femme Comp, as with its reliance on CRAssociates, see supra note 10, is similarly unpersuasive because those cases involve alleged defects in a procurement based on the failure of the evaluations in those cases to comply with the requirement of FAR Part 15.[12]

E. Whether HUD's Use of Overall Ratings Was Arbitrary for Lack of Guidance

Matt Martin contends that "the TET had no objective rules or guidance on how to assign an overall rating on the basis of the four technical factors," with the result that the "overall ratings were, by definition, arbitrary." Pl.'s Mem. 12. However, the offerors were notified by Amendment 4 to the Solicitation that specific weights or percentages would not be applied to the five factors to reach an overall rating. AR Tab 14, at 582 ("Weights/percentages are not applied to the factors."). If Matt Martin believed that the terms of the Solicitation as so amended were improper, Matt Martin had the opportunity to object to the amendment prior to the close of bidding. Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed. Cir. 2007) ("[A] party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection

---

[12]In its Reply, Matt Martin acknowledges that FAR Part 15 does not apply but contends that HUD did not comply with FAR 8.405-2(e) because the "record shows that HUD automatically considered proposals with 'Good' overall technical ratings to be technically equal and engaged in no further comparison of these proposals." Pl.'s Reply 12-13. Matt Martin also contends that "HUD has provided absolutely no explanation of its assignment of overall ratings, let alone one that is coherent and reasonable." Pl.'s Reply 9. As discussed above in Parts III.B and C, Matt Martin has not demonstrated that HUD considered proposals with "Good" overall technical ratings to be technically equal. HUD conducted an extensive evaluation of each proposal, considering each factor and each proposal's strengths and weaknesses in accordance with the Solicitation and Evaluation Plan. Under FAR Subpart 8.4, HUD provided a coherent and reasonable explanation of those factors, and the strengths and weaknesses of the individual proposals, in the Initial and Revised Evaluations. Nothing in the Evaluation Plan required HUD to describe exactly how it determined either an overall rating or how it made its final source selections. The narrative discussions in the Initial and Revised Evaluation and the statement by the SSO in the recommendation memorandum to the Contracting Officer comply with the Solicitation and sufficiently describe the evaluation and source selection process.

subsequently in a bid protest action in the Court of Federal Claims."). As the United States Court of Appeals for the Federal Circuit explained:

> It would be inefficient and costly to authorize this remedy after offerors and the agency had expended considerable time and effort submitting or evaluating proposals in response to a defective solicitation. Vendors cannot sit on their rights to challenge what they believe is an unfair solicitation, roll the dice and see if they receive award [sic] and then, if unsuccessful, claim the solicitation was infirm.

Id. at 1315 (quoting Argencord Mach. & Equip., Inc. v. United States, 68 Fed. Cl. 167, 175 n.14 (2005)). Matt Martin has waived the opportunity to object to that aspect of the procurement.

Even if Matt Martin had not waived the opportunity to object to that aspect of the procurement, its argument cannot succeed on the merits. The Solicitation and Evaluation Plan could, of course, have described in additional detail how the assignment of overall ratings was to be performed. However, the Solicitation and Evaluation Plan both sufficiently set forth the manner in which the award decision would be made and the procedures by which the evaluation would be conducted. See AR Tab 10. The arbitrary and capricious standard "requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." Advanced Data Concepts, 216 F.3d at 1058 (citing Bowman, 419 U.S. at 285). The failure to describe in any additional detail how overall ratings were to be assigned did not render the procuring agency's decision "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See 5 U.S.C. § 706(2)(A).

Based on the foregoing, the court finds that HUD's evaluation of Matt Martin's proposal and HUD's award decisions were conducted in accordance with the Solicitation and were not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See 5 U.S.C. § 706(2)(A).

Because the court has determined that HUD did not act in an arbitrary and capricious manner, it is unnecessary for the court to determine whether Matt Martin suffered significant, prejudicial error.

F. Injunctive Relief

To obtain a preliminary injunction, a plaintiff must establish: "(1) the likelihood of [the] plaintiff's success on the merits of its complaint; (2) whether [the] plaintiff will suffer irreparable harm if the procurement is not enjoined; (3) whether the balance of

hardships tips in the plaintiff's favor; and (4) whether a preliminary injunction will be contrary to the public interest. ES-KO, Inc. v. United States, 44 Fed. Cl. 429, 432 (1999) (citing FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993)). To obtain a permanent injunction a plaintiff must succeed on the merits and demonstrate: "(1) that it will suffer irreparable harm if injunctive relief is not awarded; (2) that granting the relief serves the public interest; and (3) that the harm to be suffered by it outweighs the harm to the Government and third parties." United Int'l Investigative Servs., Inc. v. United States, 41 Fed. Cl. 312, 323 (1998) (citing FMC Corp., 3 F.3d at 427); see Acumed LLC v. Stryker Corp., 551 F.3d 1323, 1327 (Fed. Cir. 2008); ATA Defense Indus., Inc. v. United States, 38 Fed. Cl. 489, 505 n.10 (1997) ("[These] factors are the same as those considered for a preliminary injunction.").

Because the court has determined that Matt Martin has not succeeded on the merits of its complaint, it finds that a permanent injunction is inappropriate.

IV. Conclusion

For the foregoing reasons, the court DENIES Matt Martin's Motion, GRANTS the government's motion, GRANTS HomeTelos's Motion, GRANTS BLB Resources's Motion, GRANTS PEMCO's Motion and GRANTS Ofori's Motion. The Clerk of Court is directed to ENTER JUDGMENT in favor of defendant. No costs.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge